No. 85-422

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN THE MATTER OF THE MENTAL
HEALTH OF D. B.

_____

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Richland,
The Honorable Nat Allen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Larry D. Mansch, Glendive, Montana

For Respondent:

Phillip N. Carter, Deputy County Attorney, Sidney,
Montana

_____

Submitted on Briefs: Oct. 25, 1985

Decided: November 27, 1985

Filed: NOV 27 1985

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Respondent D.B. appeals from a commitment order entered in the Seventh Judicial District Court, County of Richland. We affirm the order.

On June 14, 1985, the Richland County Deputy Attorney, at the request of D.B.'s mother, filed a petition seeking to commit D.B. The petition alleged four grounds for commitment:

> A. That on June 12, 1985, at approximately 1:30 a.m., the respondent woke his mother, [J.B.], and accused her of cutting up his pork chops.
>
> B. That on June 12, 1985, at approximately 2:00 o'clock a.m., the respondent went to his sister's house and demanded that that [sic] she return his car to him. The car he was demanding belongs to his sister and her husband.
>
> C. That on June 12, 1985, at approximately 3:00 o'clock p.m., the respondent was found in the Gary Schlenz residence in Glendive, Montana. The respondent was unknown to the Schlenz family and had no authority to be there.
>
> D. On June 10, 1985, the respondent told Officer Marvin Johnson of the Richland County Sheriff's Department that the respondent was not really there and later he could be beamed to different places and that Brooke Shields was older than she claimed.

Probable cause was found to support the petition. Thereafter, Larry Mansch was appointed to represent D.B. as his legal counsel. Peter J. Bruno was appointed as the Professional Person to examine D.B.

D.B. requested a trial by jury. It was held June 25, 1985. At the trial, D.B.'s mother, his sister and Peter Bruno, a psychologist, testified that they believed D.B. to be seriously mentally ill and that the least restrictive placement alternative would be Warm Springs State Hospital. D.B. testified in his own behalf. Thereafter, the jury unanimously determined D.B. to be seriously mentally ill, pursuant to § 53-21-102(14), MCA. A dispositional hearing was held immediately, following which the trial judge

2

committed D.B. to Warm Springs State Hospital for "a period of time not to exceed ninety (90) days, as is necessary to adequately treat the respondent."

D.B. raises two issues on appeal:

1. Did the District Court err in allowing the jury to hear evidence regarding violent behavior on the part of D.B. when that behavior took place several years previous to this petition and when those incidents were not set forth as allegations in the petition?

2. Did the State fail to meet its burden of proof as found in § 53-21-126(2), MCA?

We find no error in the admittance of evidence of D.B.'s past violent behavior. Rule 402, M.R.Evid., allows the admittance of relevant evidence. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid.

Section 53-21-126(2), MCA, states in part:

> Imminent threat of self-inflicted injury or injury to others shall be evidenced by overt acts, sufficiently recent in time as to be material and relevant as to the respondent's present condition.

D.B.'s past behavior is both material and relevant to his present condition in that it shows the progression of D.B.'s illness. It provides the jury with a history of his problems, his family's efforts to work with him and his potential with proper treatment. The past events are unquestionably linked to D.B.'s present condition and could make a determination of "seriously mentally ill" more probable. We find no abuse of discretion by the trial judge in choosing to allow the jury to hear that evidence.

Secondly, we find that the State met its burden of proof as set forth in § 53-21-126(2), MCA.

3

(2) The standard of proof in any hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters, except that mental disorders shall be evidenced to a reasonable medical certainty.

In order to commit D.B., the jury had to find that the evidence proved D.B. to be seriously mentally ill, § 53-21-127(2), MCA, that is "suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof or which has deprived the person afflicted of the ability to protect his life or health." Section 53-21-102(14), MCA. This section requires that respondent be a present threat to others or presently unable to protect his life or health. In the Matter of R.T. (1983), 665 P.2d 789, 790, 40 St.Rep. 1025, 1027.

There is sufficient evidence to support the jury's determination that D.B. is seriously mentally ill. Not only has he exhibited violent behavior in the past, his sister testified that she felt threatened by him on the morning of June 11, 1985, when he entered her home demanding the keys to her car. Further, D.B. was found in a stranger's home that same day. Fortunately, the woman responded calmly and no one was hurt. However, the result could have been far more tragic had she panicked. Finally, Peter Bruno, D.B.'s court-appointed psychologist, testified that he believed D.B. to be seriously mentally ill; that he lacked the ability to care for himself, specifically in that he refuses to take his medication; and that he poses a threat to others.

This evidence, if believed, supports the verdict.

Justice

4

We concur:

_____
Chief Justice

_____

_____

_____
Justices

5