2002 WY 116

### Gary BAKER, Appellant (Defendant),

v.

### The STATE of Wyoming, Appellee (Plaintiff).

No. 01–198.

Supreme Court of Wyoming.

July 29, 2002.

Carol Seeger of Carter Law Office, Gillette, WY, Representing Appellant.

Charlene Lynde and James P. Schermetzler of the County and Prosecuting Attorney's Office in and for Campbell County, Gillette, WY, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]  A police officer found Gary Baker pacing back and forth in the road at the end of an overpass in Gillette.  Mr. Baker was sunburned, dehydrated, disheveled, and disoriented.  Initially unable to identify himself, he ultimately told the officer his name and that he had walked there from his home in Sheridan.  The county attorney filed an application for involuntary hospitalization, and a jury found Mr. Baker was mentally ill.  The trial court determined the least restrictive and most therapeutic alternative for Mr. Baker would be hospitalization at the Wyoming State Hospital.  Mr. Baker appealed the decision, claiming the trial court erred in admitting evidence of his history of mental illness and prior hospitalizations and in selecting the Wyoming State Hospital as the least restrictive alternative.  We affirm.

## ISSUES

[¶ 2]  Mr. Baker presents the following issues for our review:

Issue 1:  Did the trial court err in admitting evidence of the appellant's prior history of mental illness and hospitalizations at the Wyoming State Hospital to determine whether by recent acts or omissions the appellant was a danger to himself or others[?]

Issue 2:  Did the trial court abuse its discretion in selecting the Wyoming State Hospital as the least restrictive and most therapeutic alternative for treatment[?]

The State of Wyoming phrases the issues as:

I.  Did the trial court abuse its discretion when it allowed the state to present testimony of the appellant[']s prior history of mental illness and hospitalizations[?]

II.  Did the trial court err in committing the appellant to the Wyoming State Hospital[?]

---

* Chief Justice at time of expedited conference.

## FACTS

[¶ 3] On June 12, 2001, Mark Ziska, an officer with the Gillette police department, discovered Mr. Baker pacing back and forth in the traffic lane on an overpass in Gillette. When the officer asked him who he was and whether he was okay, Mr. Baker responded, "I don't know." The officer observed he was badly sunburned, dirty, and disoriented. Ultimately, Mr. Baker identified himself and indicated he was from Sheridan. The officer called for an ambulance to assist in transporting Mr. Baker to the hospital. Mr. Baker initially cooperated with the police and the medical personnel in getting into the ambulance. However, after the ambulance began to move, he tried to open the doors and had to be handcuffed for his safety. At the hospital, Mr. Baker was very suspicious and unable to comprehend why he was there. Within a short time after being admitted, he left the hospital, was again found by the same officer near the interstate, and was returned to the hospital.

[¶ 4] The county attorney filed an application for involuntary hospitalization, and the court appointed counsel to represent Mr. Baker. A preliminary hearing on the initial detention pursuant to Wyo. Stat. Ann. § 25–10–109(h) (LexisNexis 2001) was held on June 15, 2001. The trial court concluded Mr. Baker was mentally ill and would be a danger to himself unless he received prompt and adequate treatment. The court ordered that he remain in the hospital and follow his physician's orders concerning the psychotropic medication which had been prescribed.

[¶ 5] A jury trial on the application for involuntary hospitalization was held on June 28, 2001. Evidence presented by the state included testimony from the police officer who discovered Mr. Baker on the roadway and brought him to the hospital, a psychiatrist who examined Mr. Baker, the court appointed guardian, the therapist and case manager, and Mr. Baker. Officer Ziska described his encounter with Mr. Baker and

Mr. Baker's disoriented state and attempts to resist care. Patrick Buchanan, M.D. provided a summary of Mr. Baker's previous hospitalizations and stated he agreed with the Wyoming State Hospital's paranoid schizophrenia diagnosis. Dr. Buchanan further testified that, in his opinion, Mr. Baker posed a danger to himself under the terms of the statute because he was unable or unwilling to take his prescribed medication. He described the pattern of behavior Mr. Baker exhibited over the years which resulted in recurring cycles of stabilization of his condition with proper medication and deterioration of his ability to care for himself and maintain his medication upon release or elopement from institutional care. Susan Mydland, Mr. Baker's appointed guardian when he was declared incompetent in 1994, also testified to this recurring pattern. Brian McKenzie, a mental health professional with Northern Wyoming Mental Health Center, provided additional information concerning his experience with Mr. Baker when he did attempt to live independently in Sheridan. Mr. McKenzie explained that the records demonstrated the same pattern has been occurring since Mr. Baker was twenty years old. Mr. Baker was hospitalized seven times in the Wyoming State Hospital and three times in community mental health units.

[¶ 6] Throughout the trial, Mr. Baker's counsel objected to any testimony concerning the prior hospitalizations arguing the statutory definition of "dangerous to himself" required recent acts. *See* Wyo. Stat. Ann. § 25–10–101(a)(ii)(C) (LexisNexis 2001). The trial court overruled the objections because Dr. Buchanan and the other professionals relied upon the prior hospitalizations for their opinions and they were necessary for the jury to understand Mr. Baker's condition. The jury found Mr. Baker was mentally ill, and the trial court ordered that he be hospitalized at the Wyoming State Hospital as the least restrictive and most therapeutic alternative pursuant to Wyo. Stat. Ann. § 25–10–110(j) (LexisNexis 2001).[1]

---

1. Section 25–10–110(j) (emphasis added) provides in pertinent part:

    (j) If, upon completion of the hearing and consideration of the record, the court or the

jury finds by clear and convincing evidence that the proposed patient is mentally ill the court shall consider the *least restrictive and most therapeutic alternatives*, ...

## DISCUSSION

[¶ 7]   Mr. Baker contends the trial court erred in admitting evidence concerning the history of his mental illness and prior hospitalizations.   Admission of evidence is within the trial court's sound discretion, and we will not disturb the trial court's ruling absent a clear abuse of discretion. *Munoz v. State,* 849 P.2d 1299, 1300 (Wyo.1993).   We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. *Griswold v. State,* 2001 WY 14, ¶ 7, 17 P.3d 728, ¶ 7 (Wyo.2001).   Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.   *Id.* We agree with the trial court that Mr. Baker's medical history not only was properly admitted into evidence but was essential to understanding his illness and determining the appropriate alternative.

[¶ 8]   The Wyoming statutes define mental illness as "a physical, emotional, mental or behavioral disorder which causes a person to be dangerous to himself or others and which requires treatment." Wyo. Stat. Ann. § 25–10–101(a)(ix) (LexisNexis 2001).   A person is deemed a danger to himself or others if he:

(A) Evidences a substantial probability of physical harm to himself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm; or

(B) Evidences a substantial probability of physical harm to other individuals as manifested by a recent overt homicidal act, attempt or threat or other violent act, attempt or threat which places others in reasonable fear of serious physical harm to them; or

(C) Evidences behavior manifested by recent acts or omissions that, due to mental illness, he is unable to satisfy basic needs for nourishment, essential medical care, shelter or safety so that a substantial probability exists that death, serious physical injury, serious physical debilitation, serious mental debilitation, destabilization from lack of or refusal to take prescribed psychotropic medications for a diagnosed condition or serious physical disease will imminently ensue, unless the individual receives prompt and adequate treatment for this mental illness.   No person, however, shall be deemed to be unable to satisfy his need for nourishment, essential medical care, shelter or safety if he is able to satisfy those needs with the supervision and assistance of others who are willing and available.

Wyo. Stat. Ann. § 25–10–101(a)(ii) (Lexis-Nexis 2001).

[¶ 9]   Subparagraph (C) is applicable to Mr. Baker's case.   The evidence overwhelmingly supported a finding of mental illness because recent acts or omissions demonstrated Mr. Baker was unable to satisfy his need for medical care so that serious mental destabilization from his refusal to take psychotropic medications for his diagnosed condition had occurred.   In December 1999, he was living with his ill mother in her home when she decided to move into a nursing home. He attempted to prevent her from moving and, when he was unsuccessful, became obsessed with visiting her many times a day, being increasingly paranoid and blaming law enforcement and the mental health center for his mother's departure.   The mental health center staff attempted to facilitate his visits, but, ultimately, he barricaded himself in his mother's room and was arrested for trespass. That incident resulted in his return to the Wyoming State Hospital.   In November 2000, he fled the state hospital, and the mental health staff was informed he was most likely returning to Sheridan.   His mother had passed away, and her home was locked and vacant while her estate was being closed. The mental health staff found him in the home disheveled, disoriented, and gaunt with no money or food.   They immediately arranged for his care and medication, and his condition, once again, improved.   However, the mental health staff could not force Mr. Baker to take his medication or comply with his care plan.   To insure he took the medication, they encouraged him to take it in front of them.   His appearance and behavior immediately improved for a time.   However, within a few months, the mental health staff

began to notice another deterioration. Mr. Baker avoided them, refused to answer the door, and resisted any assistance. In March 2000, he was arrested for driving under the influence of alcohol. The mental health staff noticed other evidence of his alcohol use, and he was counseled that the alcohol would aggravate his symptoms and should not be used with his medication. In early May 2000, they warned him that, if he continued to resist cooperating with his care plan, another involuntary hospitalization would be a possibility. On May 21, 2000, his mental health caseworker visited him and found the home was filled with garbage, had damaged walls, and was in a general state of disarray. A few weeks later, another visit exposed even worse conditions. Shortly thereafter, Mr. Baker was found in Gillette and hospitalized. The record unquestionably supported a finding that recent acts demonstrated Mr. Baker was a danger to himself because of his inability to maintain his medication.

[¶ 10] While requiring evidence of recent acts of endangerment, the statute does not prohibit courts from considering a person's mental health history in determining whether involuntary hospitalization is warranted. In fact, to do so would be obviously ill-advised. Such history was critical to the professionals' opinions concerning whether Mr. Baker could care for himself over time. Mr. Baker cites no authority to support his claim that admission of such evidence was error. Other courts have seen the wisdom of allowing introduction of a proposed patient's history in proceedings involving involuntary hospitalization. *In re Mental Health of D.R.S.*, 221 Mont. 245, 718 P.2d 335, 338 (1986); *In re Mental Health of D.B.*, 218 Mont. 467, 709 P.2d 161, 162 (1985) (both cases held evidence of past behavior can be material and relevant to a person's present condition). We conclude the trial court properly allowed evidence concerning Mr. Baker's mental health history.

[¶ 11] Mr. Baker further contends the trial court erred in determining hospitalization in the Wyoming State Hospital was the least restrictive and most therapeutic alternative available. Our review of the trial court's placement decision centers on whether the trial court abused its discretion by disregarding either statutory or constitutional law in not requiring a more preferable level of care. *K.C. v. State*, 771 P.2d 774, 780–81 (Wyo.1989). The state presented ample evidence supporting the trial court's decision that further hospitalization was the only realistic alternative. The professionals testified Mr. Baker would be a danger to himself if he were allowed to live on his own. His mental health caseworker testified he did not believe his organization could give adequate support for Mr. Baker to maintain himself in a stabilized condition. Unfortunately, even though Mr. Baker had access to his mother's residence, his disease prevented him from living independently. The trial court had no option but to order that he be hospitalized in the Wyoming State Hospital. Therefore, we conclude the trial court did not abuse its discretion.

[¶ 12] Affirmed.

GOLDEN, Justice, concurring.

[¶ 13] While I concur in the result reached by the majority, I reach it by a slightly different route. I believe the first issue calls into question the definition of "recent acts or omissions" as used in Wyo. Stat. Ann. § 25–10–101(a)(ii)(C). Fortunately, under the specific facts of this case, we need not indulge in any lengthy discourse on statutory interpretation. When Mr. Baker was picked up, he was sunburned, filthy, and disoriented. He resisted attempts by law enforcement and medical personnel to render aid to him and left the hospital against medical advice, only to be picked up again by law enforcement and returned to the hospital. These immediate acts clearly constitute "recent acts or omissions" that reflected the current inability by Mr. Baker to properly safeguard his mental and physical health. The statute is satisfied.

[¶ 14] The majority opinion, when speaking of "recent acts or omissions," refers to Mr. Baker's behaviors and actions as of December 1999. The majority opinion does not, however, provide any express analysis of the statutory phrase. It simply is unnecessary, under the facts of this case, to determine if

those prior behaviors and acts can also be considered "recent" under the statute.

[¶ 15]   As an evidentiary matter, the testimony regarding his prior behaviors and actions was relevant as supporting his current diagnosis and thus admissible.   Paragraph ten of the majority opinion is the operative paragraph regarding the admissibility of the testimony.   No abuse of discretion by the trial court in admitting such testimony is present.

[¶ 16]   With regard to the second issue, Mr. Baker challenges his placement at the Wyoming State Hospital.   Wyoming Statute § 25–10–110(j) requires a trial court to consider the least restrictive and most therapeutic alternatives, and the trial court did just that.   After a hearing on the issue of placement, the trial court determined that the State Hospital is the least restrictive and most therapeutic alternative for Mr. Baker.   While I understand Mr. Baker's frustration at being placed at seemingly the most restrictive setting, away from his home in Sheridan, the question regards the best possible placement for Mr. Baker under the circumstances.   This simply presents a sufficiency of the evidence issue.   As such, our standard of review is highly deferential to the trial court.   "We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law."   *Kendrick v. Barker*, 2001 WY 2, ¶ 12, 15 P.3d 734, ¶ 12 (Wyo.2001).

[¶ 17]   The record reveals that the guardian for Mr. Baker testified at the hearing on placement that, in conjunction with the current involuntary commitment proceedings, she had attempted to find an alternative, less restrictive placement for Mr. Baker.   She inquired of several facilities, including the local mental health center in Sheridan, a supported independent living center in Casper and the outpatient program at the Wyoming State Hospital.   None of these programs could adequately support the present needs of Mr. Baker.   There was an adequate factual basis to support the decision of the trial court placing Mr. Baker at the Wyoming State Hospital as the least restrictive, most therapeutic setting under the current circumstances.

[¶ 18]   The jury verdict and the placement order of the trial court are properly affirmed.