2002 WY 125

**Francis B. AHEARN, Appellant (Plaintiff),**

v.

**James D. HOLLON, Jane N. Hollon and J. Hollon Enterprises, LLC, Appellees (Defendants).**

No. 01–150.

Supreme Court of Wyoming.

Aug. 26, 2002.

Francis B. Ahearn, Pro se.

H. Rick Hollon, Douglas, WY, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] This is an appeal from a judgment of the district court ruling, in part, that appellee J. Hollon Enterprises, L.L.C. (JHE) had provided the required notice of default to appellant Francis B. Ahearn (Ahearn) concerning a sales contract entered into between those parties; that Ahearn failed to cure his default under such contract; and that JHE was entitled to take possession of the involved premises, including the lot, mobile home, and personal property at issue. We affirm and assess sanctions on appeal.

### ISSUES

[¶ 2] Ahearn sets forth the following issues on appeal:

I. Does a Purchaser under a Contract for Deed have to pay the amount shown on a Notice of Default if the amount shown on the Notice of Default does not conform to the terms of the Contract for Deed?

II. Does a Seller under a Contract for Deed have the right to retake possession and control of the premises by force and change the locks of the personal residence of the Buyer without first filing an action in court to do so when the Contract calls for such an action to be filed in the event of an alleged default?

JHE phrases the issues on appeal as:

I. The District Court did not err in finding that Defendant J. Hollon Enterprises, LLC, provided proper notice of default.

II. The District Court did not err in finding that Plaintiff Ahearn had no right to the premises once Plaintiff Ahearn failed to timely cure the default and that Plaintiff wrongfully kept Defendant J. Hollon Enterprises, LLC, out of possession of the same; as well as finding that Defendant J. Hollon Enterprises, LLC, had the right to change the locks.

### FACTS

[¶ 3] On September 26, 1998, Ahearn and JHE entered into a Contract For Deed and Title ("Contract") concerning a lot, mobile home, and personal property. Under the Contract, Ahearn was to pay JHE the amount of $24,000.00 which included a $250.00 earnest money deposit and a $250.00 amount at closing. The remaining $23,500.00 was then to be paid by Ahearn to JHE, plus interest at the rate of ten percent per annum, in 180 equal monthly installments of $252.64 beginning on November 10, 1998, and continuing on the 10th day of each month thereafter until paid in full. Also attached to the Contract was an Amortization Schedule. As a part of this arrangement, Ahearn and JHE established an escrow account at Converse County Bank (escrow agent).

[¶ 4] The escrow agent was to hold a copy of the Contract, a Warranty Deed from JHE to Ahearn, a Quit Claim Deed from Ahearn to JHE, and a Certificate of Title to the

---

* Chief Justice at time of expedited case conference.

mobile home. Under the Contract and Escrow Instructions given to the escrow agent, the escrow agent was to deliver all escrow items to Ahearn upon full and complete payment and performance by Ahearn under the Contract. Conversely, the escrow agent, at the option of JHE, was to deliver all escrow items to JHE in the event that Ahearn continued for more than thirty days to remain in default under the Contract after written notice had been given to him.

[¶ 5] Ahearn made only two payments. The first payment was in the amount of $255.00 and was credited as of November 10, 1998, with the second payment being made in the amount of $280.00, credited as of December 21, 1998. These two payments plus the $250.00 earnest money deposit and $250.00 at closing were the only payments made by Ahearn. Since Ahearn did not make the November 1998 payment in the correct amount and Ahearn was late making the December 1998 payment, JHE advised the escrow agent that it would no longer be able to rely on the Amortization Schedule attached to the Contract. Instead, JHE would accept simple interest at ten percent per annum to be figured based upon the actual amount of the payments and the dates those were received.

[¶ 6] On July 26, 2000, JHE sent Ahearn a Notice of Default via certified mail, return receipt requested, since Ahearn was then in arrears under the Contract. The Notice of Default indicated, in part, that if Ahearn failed to pay $4,770.44 through the escrow agent within thirty days of the date on the Notice of Default, he would be required to immediately vacate the premise and return possession of the premises to JHE. Ahearn acknowledged receipt of the Notice of Default on August 8, 2000. A copy of the Notice of Default, along with a letter, was also sent to the escrow agent on this date by JHE. In addition, on August 8, 2000, JHE sent Ahearn a letter which enclosed a copy of the Notice of Default via regular mail. This letter explained that the effectiveness of the Notice of Default was not dependent upon

Ahearn's acknowledging his receipt of the Notice of Default or upon Ahearn's actual receipt of the Notice of Default. Rather, under the Contract, the Notice of Default was effective as of the date that it was mailed.

[¶ 7] Ahearn failed to cure his default under the Contract or make any additional payments to the escrow agent or otherwise. On August 29, 2000, JHE delivered a Seller's Written Instruction to the escrow agent. This Seller's Written Instruction notified the escrow agent that pursuant to the Contract and Notice of Default, Ahearn had remained in default under the Contract for more than 30 days after written notice of such had been sent by mail to Ahearn. Therefore, the escrow agent was instructed to deliver all escrowed items to JHE. A copy of this instruction was also sent to Ahearn by JHE. On this date, the escrow agent delivered the escrowed items to JHE as demanded.

[¶ 8] On August 30, 2000, JHE recorded the Quit Claim Deed from Ahearn to JHE with the county recorder's office. On August 31, 2000, JHE sent two letters to Ahearn. These letters were identical except one indicated it was being sent certified mail, "return receipt requested," while the other was sent via regular post. These letters advised Ahearn that he had failed to timely cure his default under the Contract; that the Seller's Written Instruction had been delivered to the escrow agent; and that the escrow agent had delivered the escrowed items to JHE. These letters also advised that JHE retained title and ownership of the subject property; that the Quit Claim Deed from Ahearn to JHE had been recorded; and that Ahearn's contractual interest in the involved property had been cancelled and terminated. Finally, these letters notified Ahearn that if he had not already vacated the premises, he was required to do so immediately.[1]

[¶ 9] On September 30, 2000, Jane Hollon on behalf of JHE, went to the premises with the intent of cleaning it, changing the locks on the mobile home, and marketing it for sale. Ms. Hollon believed at that time that

---

1. The August 31, 2000 letter sent to Ahearn via certified mail, return receipt requested, was re-    turned to JHE marked "unclaimed."

Ahearn had vacated the property as required. When Ms. Hollon arrived, she noticed that Ahearn's personal belongings still remained within the mobile home, thus she did not enter the mobile home. Ms. Hollon had a locksmith change the locks on the mobile home and left a handwritten note on the door which advised Ahearn that she had changed the locks and that if he needed to get his personal belongings, he should contact JHE's realtor. Ms. Hollon then left the premises but ensured that the doors to the mobile home were locked.

[¶ 10] Later that day, the realtor for JHE spoke to Ahearn at the mobile home. Ms. Hollon then returned to the trailer and spoke with Ahearn. During this conversation, it was agreed between Ahearn and JHE that Ahearn would vacate the premises by October 7, 2000. On October 2, 2000, JHE sent Ahearn two letters, one via certified mail return receipt requested and the other via regular mail, which restated the October 7, 2000 deadline. Ahearn acknowledged receipt of the certified letter sent to him on October 3, 2000.

[¶ 11] On October 3, 2000, Ahearn's adult daughter, who resided within the premises with Ahearn, contacted JHE by telephone and requested that the vacate deadline be extended. On October 4, 2000, JHE agreed to extend the deadline until October 29, 2000, and that Ahearn would pay to JHE the amount of $250.00 for rent for the three-week extension period. On this same date, JHE mailed Ahearn and his daughter letters confirming this arrangement.

[¶ 12] Further, on October 4, 2000, Ahearn telephoned James D. Hollon on behalf of JHE. Ahearn advised Mr. Hollon that he wanted to get together. Mr. Hollon asked what Ahearn wanted to discuss, and Ahearn replied that he would send Mr. Hollon a letter. Shortly, thereafter, JHE received a letter from Ahearn dated October 4, 2000. This letter acknowledged that the $250.00 being sent was to be used as rent until the end of October and would not be applied to amounts owed under the Contract. Soon after this letter was received by JHE, Mr. Hollon, on behalf of JHE, and Ahearn spoke

again via telephone. Ahearn inquired if they could get to together and renegotiate. Mr. Hollon declined, indicating that he was not interested in renegotiating and that JHE would stick to those terms that had been previously agreed upon.

[¶ 13] Ahearn did not vacate the premises by October 29, 2000; instead, he filed his complaint in this action on October 25, 2000. On November 21, 2000, JHE filed its answer to Ahearn's complaint and a counterclaim seeking possession of the premises, to eject Ahearn from the property, and damages. On December 29, 2000, JHE filed a second answer to the complaint of Ahearn and refiled its counterclaim.

[¶ 14] After a trial was held, the district court entered a judgment which, in part, ruled that JHE had provided the required Notice of Default to Ahearn under the Contract; that Ahearn failed to cure his default under the Contract; and that JHE was entitled to take possession of the subject property. This appeal followed.[2]

### STANDARD OF REVIEW

[¶ 15] After trial, the district court issued specific findings of fact and conclusions of law. In its recently published case of *Hutchings v. Krachun*, 2002 WY 98, ¶ 10, 49 P.3d 176, ¶ 10 (Wyo.2002), this court reiterated our standard of review:

The purpose of specific findings of fact is to inform the appellate court of the underlying facts supporting the trial court's conclusions of law and disposition of the issues. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). While the findings of fact made by a trial court are presumptively correct, we examine all of the properly admissible evidence in the record. Because this court does not weigh the evidence de novo, findings may not be set aside because we would have reached a different result. Rather, the appellant has the burden of persuading the appellate court that the finding is erroneous. *Id.* See also *Maycock v. Maycock*, 2001 WY 103, ¶ 11, 33 P.3d 1114, ¶ 11 (Wyo.2001). Findings of fact are not set aside unless

2. Apparently Ahearn has remained on the premises since October 29, 2000, until this day.

inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. The definitive test of when a finding of fact is clearly erroneous is when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A determination that a finding is against the great weight of the evidence means that a finding will be set aside even if supported by substantial evidence. *Id.See also Mathis v. Wendling*, 962 P.2d 160, 163 (Wyo.1998). Conclusions of law made by the trial court are not binding on this court and are reviewed de novo. *Maycock*, ¶ 12.

## DISCUSSION
### Sufficiency of the Notice of Default

[¶ 16] In his first issue on appeal, Ahearn asserts that because the amount of the default specified in the Notice of Default was incorrectly stated too high, the Notice of Default did not conform to the Contract and it was, therefore, void and of no effect. Specifically, Ahearn erroneously contends that there could be no operative default until he received proper notice of his default pursuant to the Contract.

[¶ 17] In this instance, it is appropriate to apply that reasoning used in the case of *Kost v. First Nat'l Bank of Greybull*, 684 P.2d 819, 823 (Wyo.1984) wherein we stated:

We agree with appellant that failure to make payments, while constituting grounds for forfeiture of a conditional sales contract, does not operate to terminate the contract absent appropriate notice to the nonperforming party. *Angus Hunt Ranch, Inc. v. Bowen*, Wyo., 571 P.2d 974, 978 (1977); *Younglove v. Graham & Hill*, Wyo., 526 P.2d 689 (1974). We cannot agree, however, that the letters from Stahl and her attorney, invoking the default clause and requesting payments, failed to satisfy the notice requirements under the contract in this case.

Like in *Kost*, Ahearn's failure to make payments, while constituting grounds for forfeiture of the Contract, did not operate to terminate the Contract absent appropriate notice to Ahearn. Similarly as in *Kost*, we also hold that the Notice of Default sent by JHE to Ahearn invoking the default clause and requesting payment satisfied the notice requirements under the Contract.

[¶ 18] As set forth in *Kost*, at 823 (citing *Amoco Prod. Co. v. Stauffer Chemical Co.*, 612 P.2d 463, 465 (Wyo.1980) and cases cited therein) our appellate obligation in cases of this sort is to interpret and construe the contract as a matter of law in order to shed light on the intention and understanding of the parties. Intention is determined from the words of the contract if the language is clear and unambiguous, considering the contract as a whole, and taking into account the relationships between the various parts. In this instance, as was the case in *Kost*, the default provision in the Contract contemplates Ahearn's breach of any term of the Contract, including payment of money. The purpose of the notice requirement with respect to default was to put Ahearn on notice that the default clause was being invoked by JHE, why such action was being taken, and how Ahearn might remedy the problem within the time allotted. *See also Angus Hunt Ranch, Inc. v. REB, Inc.*, 577 P.2d 645, 650 (Wyo.1978).

[¶ 19] The Contract provided, in applicable part:

27. *NOTICES/ADDRESSES.* Any and all notices or other communications required or permitted by this Contract or by law to be served on or given to either party hereto shall be in writing and shall be deemed actual notice and duly served, given, and received when and as of the date deposited in the United States mail, postage prepaid, certified, return receipt requested, addressed to the respective party in accordance with the addresses listed as follows:

Buyer: Mr. Francis B. Ahearn
[Address]
Seller: J. Hollon Enterprises, L.L.C.
[Address]
. . .

28. *RIGHTS UPON DEFAULT.* In the event of a default by Buyer, Seller shall notify Buyer in writing of such a default and Buyer shall have 30 (Thirty) days after such Notice of Default to cure the default.

Seller shall also send a copy of said notice to the Escrow Agent by U.S. mail, certified, return receipt requested. Should Buyer fail to timely cure such a default in the performance of this Contract, Buyer shall immediately and peaceably vacate the premises and return possession of the real property, mobile home, and personal property to Seller in good, sound, and acceptable condition, repair and order; in addition, both Buyer and Seller agree that it would be impractical or extremely difficult to determine the actual damages suffered by Seller because of such default, that the amounts paid by Buyer to Seller on execution and acceptance of this Contract and at closing plus any amounts paid monthly as specified above constitute a reasonable estimate of such damages, that Seller may retain such amounts as rents and liquidated damages in the event of such a default, that Seller may retake possession of the premises pursuant to Wyoming law for Forcible Entry and Detainer or otherwise, that Seller shall retain title and ownership of the real property, mobile home, and personal property, that Seller shall have any other rights accorded by Wyoming law, and that this Contract shall be cancelled and terminated....

This language used within the Contract is absolutely clear and unambiguous.

[¶ 20] The Notice of Default informed Ahearn of the nature of his default, namely that he was delinquent in his monthly payments. The Notice of Default also informed him of the amount that Ahearn had to pay to cure the default and the applicable timeframe. Since Ahearn knew the amount of each monthly installment, he cannot reasonably maintain that the Notice of Default failed to inform him of the extent of his default. In addition, a subsequent letter sent on behalf of JHE reaffirmed the nature of Ahearn's default and indicated that he could avoid cancellation and termination of the Contract by making payment within thirty days from the date in which the Notice of Default had been mailed.

[¶ 21] Nonetheless, Ahearn complains that the amount of $4,770.44 indicated as his required payment to cure within the Notice

of Default is too high and, therefore, the Notice of Default was ineffective. In support of this argument, Ahearn makes numerous sundry calculations within his brief filed with this court and asserts that the $4,770.44 amount under each of these proffered calculations was inappropriately inflated. However, a simple review of Ahearn's posed calculations makes it patently clear that they are all incorrect. Namely, each of Ahearn's professed calculations fail to take into account both the amount of principal and interest owed by him to JHE under the Contract and property taxes paid by JHE although payment of such taxes was the obligation of Ahearn under the Contract. The correct calculation of the amount to cure totaled an amount higher than the $4,770.44 demanded by JHE to be paid by Ahearn. Obviously, JHE had every right to accept an amount less than that owed by Ahearn under the Contract. Had Ahearn timely paid the amount of $4,770.44 as stated in the Notice of Default, the default would have been required to be deemed cured.

[¶ 22] Simply put, the Notice of Default and subsequent letter sent by JHE to Ahearn notified Ahearn of the manner in which he had breached the Contract and of the performance necessary to cure his default. Such notice fully satisfied the express provisions set forth in the Contract and served to trigger the remedies under the default clause afforded to JHE. Therefore, we hold that the district court did not err in finding that the Notice of Default was sufficient under the terms enunciated within the Contract; that Ahearn was unquestionably in default; and that he failed to cure the default in a timely fashion causing the cancellation and termination of the Contract under its express terms.

### Obtaining Possession of the Premises

[¶ 23] In his last issue on appeal, Ahearn asserts that JHE improperly took possession of the premises by changing the locks on the mobile home. According to Ahearn, JHE was required to bring a Forcible Entry and Detainer action or similar court approved procedural action to appro-

priately take possession of the property. This argument also lacks merit.

[¶24] As set forth above, paragraph 28 of the Contract plainly and clearly provides that upon Ahearn's failure to cure his default under the Contract, the Contract would be cancelled and terminated. Upon cancellation and termination of the Contract, Ahearn was mandated to "immediately and peaceably vacate the premises and return possession of the real property, mobile home, and personal property" to JHE "in good, sound, and acceptable condition, repair and order." The Contract at paragraph 28 further states that upon cancellation and termination of the Contract, JHE "may retake possession of the premises pursuant to Wyoming law for Forcible Entry and Detainer or *otherwise*" and that JHE "shall have any other rights accorded by Wyoming law" (emphasis added). Finally, the Contract provides that JHE "shall retain title and ownership of the real property, mobile home, and personal property" upon cancellation and termination of the Contract.

[¶25] The language of the Contract could not be any more unambiguous. Upon Ahearn's failure to cure his default under the Contract, the Contract was cancelled and terminated by its explicit terms. Ahearn then had an affirmative duty to return possession of the property to JHE but failed to do so even in the face of numerous requests by JHE that Ahearn take this action. In addition, as soon as the Contract was cancelled and terminated, JHE immediately retained title and ownership to the subject property. Moreover, upon the cancellation and termination of the Contract, while JHE had an ability to instigate a Forcible Entry and Detainer action or other procedural action in a court of law, the Contract indicated that was not JHE's only right. JHE had the right to take any other action in an attempt to take possession of the property as it so chose. This included the right to change the locks on the mobile home and giving Ahearn notice that if he wanted to obtain his personal effects, he should contact JHE's realtor.

[¶26] Finally, Ahearn argues that allowing JHE to change the locks on the mobile home in an attempt to take possession of the property violates his constitutionally protected right to be secure in his person, possessions, and property and did not afford him due process. Ahearn voluntarily entered into the Contract with JHE and, by doing so, must be accountable for understanding and abiding by the terms provided within that Contract. Here, Ahearn clearly voluntarily contracted to abide by the terms of the Contract thereby waiving any asserted constitutional protections afforded him, whether real or imagined, as asserted by Ahearn. Again, we find no merit in this aspect of Ahearn's argument.

[¶27] As stated previously, this Contract provided that upon cancellation and termination of the Contract, Ahearn had an affirmative duty to return possession of the property to JHE, and JHE had the right to take possession of the property by Forcible Entry and Detainer, other legal procedural action in the courts, or otherwise. Indeed, it is further recognized by this court that JHE ultimately took legal action with the court system to effectuate its obtaining possession of the involved property by filing its counterclaim in this case.

## Accruing Rent

[¶28] In its brief, JHE requests that this court require Ahearn to pay rent for the period of time he has apparently remained in possession of the premises since May 1, 2000, at the rate of $250.00 per month. A similar prayer for relief is contained within the counterclaim and refiled counterclaim of JHE filed in this action. This court, however, is not in the position to act as a fact finder and, therefore, may not take the action requested by JHE. Notwithstanding, JHE may have appropriate remedy before the district court under its counterclaims or otherwise in order to effectuate the collection of those damages incurred by JHE as a result of Ahearn's remaining in possession of the premises since May 1, 2000.

## Imposition of Sanctions

[¶29] This court has previously well established that while we are generally reluctant to impose sanctions, we will make such

an award in those rare circumstances where an appellate brief lacks cogent argument, is devoid of pertinent authority to support the claims of error, and/or fails to make adequate references to the record. *Gray v. Stratton Real Estate*, 2001 WY 125, ¶ 11, 36 P.3d 1127, ¶ 11 (Wyo.2001) (citing *Small v. Convenience Plus Partners, Ltd.*, 6 P.3d 1254, 1256 (Wyo. 2000)). This is such a rare circumstance. Moreover, while we may make allowances for pro se litigants, they are not excused from the requirement that their brief be supported by cogent argument and citations to pertinent authority. *Stone v. Stone*, 7 P.3d 887, 891 (Wyo.2000).

[¶ 30] In this case, upon our review of those issues raised by Ahearn and the absolute lack of cogent argument and recitation of any pertinent authority in support of such issues, we have taken long pause to consider whether such sanctions should be properly imposed against Ahearn. Further, we note that we have granted Ahearn considerable leeway in reviewing his brief and addressing those issues presented therein. Simply stated, there is no basis in law, equity or public policy for Ahearn to defeat the contractual obligations into which he freely entered with JHE. Ahearn's arguments against non-enforcement of the Contract as adjudicated by the district court are not supported by pertinent authority and are completely lacking in merit. We, therefore, certify that there is no reasonable basis for this appeal and that sanctions are appropriate. W.R.A.P. 10.05.

[¶ 31] JHE is directed to submit a statement of costs and attorney fees associated with responding to this appeal. W.R.A.P. 10.06. Upon review, we will award an appropriate amount in the form of sanctions.

### CONCLUSION

[¶ 32] Given those reasons set forth above, the judgment of the district court is affirmed and appellate sanctions pursuant to W.R.A.P. 10.05 are awarded in favor of JHE and against Ahearn.