2004 WY 140

**John Michael JACOBY and Barbara Jean Jacoby, Appellants (Defendants),**

**v.**

**Yvonne Teresa JACOBY, Appellee (Plaintiff).**

No. 03–178.

Supreme Court of Wyoming.

Nov. 15, 2004.

Representing Appellants: Steven F. Freudenthal of Freudenthal, Salzburg & Bonds, P.C., Cheyenne, Wyoming.

Representing Appellee: Cheryl Wadas, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶1] John Michael Jacoby and Barbara Jean Jacoby (the appellants) appeal from an order of equitable lien in the amount of $64,600.00 entered by the district court against property owned by them and in favor of their former daughter-in-law, Yvonne Teresa Jacoby (the appellee). We reverse because the appellee did not prove all of the necessary elements of an unjust enrichment claim.

## ISSUES

[¶2] The parties raise the following issues:

1. Whether the district court correctly allowed recovery based upon the theory of constructive trust or equitable lien?

2. Whether the statute of frauds barred the appellee's claim?

3. Whether the doctrine of unclean hands barred the appellee's claim?

4. Whether lack of consideration barred the appellee's claim?

5. Whether the district court improperly provided relief outside the pleadings?

6. Whether the district court applied the proper measure of damages?

## FACTS

[¶3] The appellants' family home was located on property they own in Cheyenne. During the appellee's marriage to the appellants' son, Mike, the appellants agreed to let their son and daughter-in-law build a house on the property. All parties intended the

house to be occupied by the appellee, her husband, and their children. All parties contributed funds toward construction of the house. However, before construction was complete, Mike Jacoby left his wife and children. Ultimately, the appellants completed construction themselves and moved into the house.

[¶ 4] The appellee subsequently filed a complaint against the appellants in which she claimed that, after she had contributed finances, materials and services to the construction, the appellants had reneged on their promise that she could occupy the house. She alleged that the appellants were unjustly enriched as a result, and that equitable title to the house belonged to her subject to any interest of the appellants. She sought imposition of a constructive trust. In addition to the general denials contained in their answer, the appellants filed a counterclaim in which they alleged that they had borrowed money and expended funds on the project, that they had taken out mortgages on the property, and that the appellee had removed property from the house.

[¶ 5] The matter was tried to the district court, after which the district court issued a decision letter and order granting to the appellee an equitable lien against the appellants' property in the amount of $64,600.00. Relevant findings in the order were: the appellee and her then-husband obtained the appellants' permission to build their marital residence on the lot; construction was eighty-five percent complete when the appellee was divorced; the appellee requested and was denied permission to move into the house; the appellants completed construction of the house; the appellee proved the existence of a promise and unjust enrichment; a constructive trust remedy would be excessive; and an equitable lien in the amount of $64,600.00 was appropriate.[1]

## STANDARD OF REVIEW

[¶ 6] "When a trial court in a bench trial makes express findings of fact and conclusions of law, we review the factual

determinations under a clearly erroneous standard and the legal conclusions *de novo.*" *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003). In reviewing the factual findings, we apply the following standard:

"The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Life Care Centers of America, Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003) (*quoting Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 958 (Wyo.1999)). Findings may not be set aside because we would have reached a different result. *Double Eagle Petroleum & Min. Corp. v. Questar Exploration & Production Co.*, 2003 WY 139, ¶ 6, 78 P.3d 679, 681 (Wyo.2003) (*quoting Ahearn v. Hollon*, 2002 WY 125, ¶ 15, 53 P.3d 87, 90 (Wyo. 2002)). Also, in reviewing a trial court's findings of fact,

"we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law."

... We affirm the trial court's findings if there is any evidence to support them.

1. After her husband left, the appellee filed a divorce action, in which she was awarded the right to all proceeds awarded in her action against the appellants, including her former husband's share of any proceeds, as payment of child support.

*Dexter,* 2003 WY 38, ¶ 7, 65 P.3d at 389 (*quoting Kendrick v. Barker,* 2001 WY 2, ¶ 12, 15 P.3d 734, 738 (Wyo.2001)).

[¶ 7] When reviewing questions of law *de novo,* we afford no deference to the decision of the district court. *Double Eagle Petroleum & Min. Corp.,* 2003 WY 139, ¶ 6, 78 P.3d at 681 (*quoting Amoco Production Co. v. EM Nominee Partnership Co.,* 2 P.3d 534, 540 (Wyo.2000)). Requests for equitable relief are matters over which the district court exercises broad discretion. *Wilson v. Lucerne Canal and Power Co.,* 2003 WY 126, ¶ 9, 77 P.3d 412, 416 (Wyo.2003) (*quoting Polo Ranch Co. v. City of Cheyenne,* 2003 WY 15, ¶ 25, 61 P.3d 1255, 1263 (Wyo.2003)). Therefore, we review the district court's decision to impose an equitable lien under the abuse of discretion standard:

> In determining whether there has been an abuse of discretion, we focus on the "reasonableness of the choice made by the trial court." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). If the trial court could reasonably conclude as it did and the ruling is one based on sound judgment with regard to what is right under the circumstances, it will not be disturbed absent a showing that some facet of the ruling is arbitrary or capricious. *Id.* (citing *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985)); *Basolo [v. Basolo ],* 907 P.2d [348] at 353 [ (Wyo.1995) ].

*Jordan v. Brackin,* 992 P.2d 1096, 1098–99 (Wyo.1999).

## DISCUSSION

[¶ 8] It is difficult to characterize in legal terms the arrangement under which the parties began construction of this house. It is doubtful that a contract existed, given the dearth of agreement, or even discussion, of many significant terms. We do know that title to the property remained with the appellants and that the appellee and her husband were supposed to make monthly payments toward the loan from the appellants. At the outset, the appellants furnished the real property, most of the funds, and some of the work. The appellee and her husband provided most of the work, some of the funds, and some of the building materials. The most

that can be said is that this was an informal family arrangement that failed because the appellee and her husband divorced, resulting in an inability to finish the project or make the payments as expected.

[¶ 9] We have said that an appropriate exercise of discretion occurs when " 'conclusions [are] drawn from objective criteria, [and] sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *In re Worker's Compensation Claim of Shryack,* 3 P.3d 850, 855 (Wyo. 2000) (*quoting Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998)).

> "A court does not abuse its discretion unless it acts in a manner [that] exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances."

*Roberts v. Roberts,* 816 P.2d 1293, 1297 (Wyo. 1991) (*quoting Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980)). Whether an abuse of discretion has occurred must be determined on the peculiar facts of each individual case. *Roberts,* 816 P.2d at 1297 (*quoting Martin v. State,* 720 P.2d 894, 897 (Wyo.1986)).

[¶ 10] Even when acting in equity, the district court is not free simply to do what it thinks is fair. Relief must be fashioned within the context of a recognized equitable theory. In the instant case, that theory is unjust enrichment. The elements of an unjust enrichment claim are as follows:

> (1) [v]aluable services were rendered, or materials furnished, (2) to the party to be charged, (3) which services or materials were accepted, used and enjoyed by the party to be charged; and (4) that the services or materials were furnished under such circumstances as would reasonably notify the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such

payment, the party would be unjustly enriched.

*Nuhome Investments, LLC v. Weller,* 2003 WY 171, ¶ 22, 81 P.3d 940, 948 (Wyo.2003). *See also Boyce v. Freeman,* 2002 WY 20, ¶ 12, 39 P.3d 1062, 1065 (Wyo.2002).

[¶ 11] In the present case, the only element of unjust enrichment proved by the appellee is the first element. She and her husband did render valuable services and furnish materials. But those services were not rendered and those materials were not furnished *to the appellants* in the classic sense of unjust enrichment. Rather, this was mutual participation in a family venture that failed; and it failed because of the appellee and her husband, not because of the appellants. And if the services and materials were "accepted, used and enjoyed" by the appellants, that occurred only after the appellee and her husband failed to finish the house and failed to make their scheduled payments. *Nuhome Investments, LLC,* 2003 WY 171, ¶ 22, 81 P.3d at 948. The appellants' attempt to mitigate their damages should not be used to create an obligation that did not exist.

[¶ 12] The fourth element of an unjust enrichment claim is actually two elements. Not only must the proponent of the theory prove that the circumstances were such that the other party was reasonably notified that the proponent expected to be paid for services rendered or materials furnished, but the proponent must prove that "[w]ithout such payment, the party would be unjustly enriched." *Id.* Here, there is no evidence that, as part of the poorly crafted interfamily arrangement, the appellee expected the appellants to pay her for her services or for any materials she may have furnished. She merely expected to remain married to her husband and to move into the house with him. The fact that such did not occur did not create an obligation on the part of the appellants to pay her. As an equitable remedy, unjust enrichment is a shield, not a sword.[2]

[¶ 13] We have had the following to say about the second part of the fourth element of an unjust enrichment claim:

Element four is the heart of an unjust enrichment claim. The receipt of a benefit must be unjust as to the party to be charged. Unjust enrichment is an equitable remedy that is appropriate only when the party to be charged has received a benefit that in good conscience the party ought not retain without compensation to the party providing the benefit. "The words 'unjust enrichment' concisely state the necessary elements of an equitable action to recover money, property, etc., which 'good conscience' demands should be set over to the appellee by appellants pursuant to an implied contract between them." *Landeis v. Nelson,* 808 P.2d 216, 218 (Wyo.1991). As stated at 66 Am. Jur.2d *Restitution and Implied Contracts* § 8 (2001):

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly."

*Boyce,* 2002 WY 20, ¶ 15, 39 P.3d at 1065–66.

[¶ 14] The appellants tried to help out their son and his wife by providing land upon which they could build a house. Everyone's expectation was that the younger couple would live there with the grandchildren and would repay the $26,000.00 loan from the appellants used to start construction. Instead, the appellants had to borrow another $25,000.00 to complete the project, and ended

---

**2.** We are not hereby declaring that the expectation of "payment" necessary to support an allegation of unjust enrichment must necessarily be an expectation of payment in money.

up with a much larger mortgage against their property. While it is true that the appellee and her husband also contributed considerable sums and work effort, and while it is true that the value of the appellants' real property has been enhanced, those facts alone do not make the appellants "unjustly enriched." An extended mortgage late in life is not "enrichment."

[¶ 15] The divorce caused the appellee and her husband to lose their investment in the house. That loss, although perhaps not "fair," was not the appellants' fault and should not be their responsibility.[3] The district court's decision is based entirely on an increased property value theory. That decision ignores the realities facing this older couple. Instead of having their son's family living next door, and instead of receiving half of the increased monthly mortgage payments, the appellants now share their property with renters, and they pay more than twice what they used to pay as a monthly mortgage payment. Their additional reward, from this lawsuit, is a $64,600.00 lien on their property. This is simply wrong. "Let no good deed go unpunished" is not an equitable maxim.

[¶ 16] The appellants were not enriched by this failed venture, and they certainly were not unjustly enriched. These facts did not create a situation where the appellants received a benefit "that in good conscience [they] ought not retain...." *Boyce*, 2002 WY 20, ¶ 15, 39 P.3d at 1065. Discretionary equitable decisions require more than "doing the math." The facts of this case just do not cry out for the court to step in and draft a contract where none existed.

[¶ 17] This matter is reversed and remanded to the district court for entry of an order consistent with this opinion. Given the above resolution, the other issues presented by the appellants need not be addressed.

KITE, Justice, dissenting, in which HILL, C.J., joins.

[¶ 18] I disagree with the majority's conclusion that the district court abused its discretion in holding Ms. Jacoby proved the elements of an unjust enrichment claim. Applying the abuse of discretion standard to this equitable ruling as we are required to do, the district court "could reasonably conclude as it did" from the evidence and argument presented. *Jordan v. Brackin*, 992 P.2d 1096, 1098–99 (Wyo.1999). The ruling was "one based on sound judgment with regard to what is right under the circumstances," and no showing was made that any facet of the ruling was arbitrary or capricious. *Id.*

[¶ 19] The doctrine of unjust enrichment provides for recovery on a contract implied in equity. *Johnson v. Anderson*, 768 P.2d 18, 25 (Wyo.1989). It invites judgments about what is right between two particular people, considering equity and good conscience. Dan B. Dobbs, *Law of Remedies*, § 4.1(2) at 558 (2nd ed.1993). To establish a claim for unjust enrichment, the claimant must show:

1) Valuable services were rendered, or materials furnished, 2) to the party to be charged, 3) which services or materials were accepted, used and enjoyed by the party, and 4) under such circumstances which reasonably notified the party to be charged that the [party] in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 36, 39 P.3d 1051, ¶ 36 (Wyo.2002) (citations omitted). Imposition of an equitable lien, the remedy awarded here, is one possible remedy for unjust enrichment.[1]

[¶ 20] Unjust enrichment occurs where a party receives something of value without

---

3. If the project had failed because the **appellants** had divorced, the opposite conclusion—that they had been unjustly enriched—might readily be true.

1. Equitable liens are imposed where unjust enrichment results from the receipt of particular property. *Rolfe v. Varley*, 860 P.2d 1152, 1156 (Wyo.1993). An equitable lien is said to be a special and limited form of the constructive trust and closely related to subrogation because each is a remedy used to prevent unjust enrichment or fraud, and to allow restitution. *Id.*

payment, which is accepted and used so as to unjustly enrich the recipient of the goods or services. *McNeill Family Trust v. Centura Bank*, 2003 WY 2, ¶ 26, 60 P.3d 1277, ¶ 26 (Wyo.2003). Unjust enrichment is an equitable claim that is appropriate only when the party to be charged has received a benefit that in good conscience the party ought not retain without compensation to the party providing the benefit. *Boyce v. Freeman*, 2002 WY 20, ¶ 15, 39 P.3d 1062, ¶ 15 (Wyo. 2002). The majority cites with approval the following language from *Boyce:*

> The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that *one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property* or benefits *received,* retained, or appropriated, *where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy,* either directly or indirectly.

*Id.* (emphasis added). Although the majority cites these principles, in my view it fails to apply them when it reverses the district court's order.

[¶ 21] Ms. Jacoby presented evidence that the home she helped construct on her in-laws' property was intended originally for her, her then husband and their children.[2] [Vol. II 71] She testified that she and her husband had been looking for a home to buy near his parents' home when Mr. Jacoby suggested the site on the lot next to their home. [Vol. II 69–71] When Ms. Jacoby and her husband attempted to obtain a loan to start construction of the home, they discovered they could not because the Jacobys owned the land on which the home was to be built. [Vol. II 72] Ms. Jacoby testified it was her understanding that the Jacobys looked into partitioning the land so that she and her husband could obtain a loan, but upon learning it could not be partitioned, refinanced their home, obtained a loan of $31,000 and loaned $26,000 of that amount to Ms. Jacoby and their son to start construction of the home. [Vol. II 73]

[¶ 22] Ms. Jacoby testified that she and her husband had joint income of approximately $8,000 per month and put much of that toward building the home. [Vol. II 77] From their joint income, Ms. Jacoby and her husband also paid half ($400 per month) of the Jacobys' payment on the $31,000 loan until her husband left in May of 2001. [Vol. II 78, 127] Before his departure, she testified they also put money toward the concrete work and framing of the home [Vol. II 80] and performed much of the work on the home, including breaking ground, digging out and pouring the footers, pouring the foundation and erecting the walls. [Vol. II 81] Ms. Jacoby testified that members of her family and friends also contributed time and effort to help build the home. [Vol. II 83] Additionally, Ms. Jacoby testified that she and her husband bartered services in order to get the home built.

[¶ 23] Ms. Jacoby testified the Jacobys did not help with construction of the home. [Vol. II 84] She also testified that her in-laws did not expend money beyond the $26,000 loan or purchase construction materials. [Vol. II 125] After her husband disappeared in May 2001, Ms. Jacoby continued to work on the home. [Vol. II 131] She testified she had a conversation with her father-in-law during this time in which he intimated the house was her home and she would be able to continue to live there despite her husband's disappearance. [Vol. II 132] Then, in October of 2001, it became clear to her during a conversation with the Jacobys that they did not intend for her and her children to live in the home. [Vol. II 134]

2. As the majority opinion indicates, the district court in the divorce action awarded to Ms. Jacoby as child support her ex-husband's share of all proceeds she recovered in this action. There-fore, the $64,600 equitable lien represents the value of their combined contribution to the home.

[¶ 24] Ms. Jacoby's testimony that the home was intended for her family was confirmed by her former husband, the Jacobys' son, who also testified that he planned to live in the home with his wife and children upon its completion and intended to use his earnings to construct the home. [Vol. II 283] He testified that he and Ms. Jacoby paid for the supplies, services and labor required for construction of the home. [Vol. II, 316] Ms. Jacoby's father-in-law, Mr. Jacoby, also testified that he made an agreement with his son that he would loan him money to get started building the home. [Vol. II, 327] He testified that the initial plan was for Ms. Jacoby to move into the home, but that he and his wife changed their minds when their son left and told her in October 2001 that she could not live in the home. [Vol. II 400, 402]

[¶ 25] Thus, the evidence presented, taken as true, showed: (1) Ms. Jacoby and her then husband rendered substantial supplies, services and labor; (2) on the home constructed on the Jacobys' lot and now inhabited by the Jacobys; (3) by moving into the house the Jacobys accepted, used and enjoyed the supplies, services and labor rendered by Ms. Jacoby and their son; and (4) the circumstances were such that both the Jacobys and Ms. Jacoby knew that she expected to live in the home that she helped construct. Evidence of the fourth element was presented in the form of witness testimony to the effect that from the inception the parties involved intended the home to be occupied by Ms. Jacoby and her family. The majority acknowledges that the fourth element of an unjust enrichment claim does not necessarily require proof of an expectation of payment in money. Ms. Jacoby "expected to be paid" for her efforts in building the home by being allowed to live in the home.

[¶ 26] In *Robinson v. Robinson,* 100 Ill. App.3d 437, 57 Ill.Dec. 532, 429 N.E.2d 183 (1981), the court affirmed imposition of an equitable lien in a case brought by a woman against her former parents-in-law to establish her interest in property belonging to them to which she voluntarily and without their consent made substantial improvements. Addressing first the issue of unjust enrichment, the court said:

The improvements were made with the knowledge, cooperation and approval of [the parents]. They were the major investment a young couple would ever be expected to make. The relationship of the parties and their dealings would lead one to believe that the home that was constructed would be a permanent home for [the son and daughter-in-law]. The court did not err in granting [the daughter-in-law] an interest in the property.

*Id.* In considering the appropriateness of the equitable lien, the court said:

"The trend of modern decisions is to hold that in the absence of an express contract, a lien based upon the fundamental maxims of equity may be applied and declared by a court of equity out of general considerations of right and justice as applied to the relationship of the parties and the circumstances of their dealing. An equitable lien is the right to have property subjected in a court of equity to payment of a claim. It is neither a debt nor a right of property, but a remedy for a debt."

*Id.* at 446, 57 Ill.Dec. 532, 429 N.E.2d 183 (citation omitted).

[¶ 27] For similar reasons and under similar circumstances, the district court concluded that Ms. Jacoby proved the elements of unjust enrichment and imposed an equitable lien giving her a security interest in the home. From the evidence presented, the district court could reasonably conclude as it did. To allow the Jacobys to change their minds and occupy the home after Ms. Jacoby contributed substantial time, money, labor and supplies in constructing the home results in the Jacobys being unjustly enriched. From the evidence presented, the district court's ruling was one based on sound judgment with regard to what was right under the circumstances, and no showing was made that any facet of the ruling was arbitrary or capricious. The Jacobys should not be permitted unjustly to enrich themselves at the expense of Ms. Jacoby and her children, but should be required to make restitution for the benefit received from her substantial contributions to the home. It is just and equitable that such restitution be made and requir-

ing it involves no direct or indirect violation or frustration of law or opposition to public policy. Applying the appropriate standard of review, the district court's exercise of discretion should be affirmed.