# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 4

OCTOBER TERM, A.D. 2013

*January 14, 2014*

CURTIS F. SYMONS,

Appellant
(Plaintiff/Counter-Defendant),

v.

WAYNE R. HEATON and TIMOTHY S. TARVER, Co-Administrators of the Estate of Gary L. Plachek,

Appellees
(Defendants/Counter-Plaintiffs).

S-13-0082

*Appeal from the District Court of Sheridan County*
*The Honorable Robert E. Skar, Judge*

*Representing Appellant:*
> H. W. Rasmussen, Sheridan, WY.

*Representing Appellees:*
> Timothy S. Tarver, Sheridan, WY.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   After Gary Plachek died intestate, leaving an estate worth approximately $300,000.00, his friend and caretaker Appellant Curtis Symons (Symons) filed a claim against the estate in the amount of $259,200.00. Symons sought compensation for the care and services that he provided to Plachek during the last nine years of Plachek's life. After the co-administrators denied Symons' claim, Symons brought an action against them. The district court disposed of the action upon a motion for summary judgment by the estate, and this appeal followed.

## ISSUES

[¶2]   Symons states his issues as follows:

> The trial court erred in granting summary judgment on Symons' claim based on an implied-in-fact contract.
>
> The trial court erred in granting summary judgment on Symons' implied-in-law contract claims.

## FACTS

[¶3]   Gary Plachek and Curtis Symons met in 1964 in 7th grade and remained close friends throughout their lives until Plachek's death in 2010. The two friends were so close that in 2001, Plachek's mother expressed concern to Symons regarding her son's excessive drinking and asked Symons to take care of her son after she was gone. Symons was a recovered alcoholic while, by all accounts, Plachek was an alcoholic with no desire to stop drinking.

[¶4]   In mid-2001 Symons moved into Plachek's home at Plachek's request and lived with Plachek until his death in 2010. Symons did not pay rent but continued working at his job while also caring for Plachek by driving him places, running his errands, taking care of his dog, maintaining the household, and doing other tasks as needed. Plachek did not work and drank and slept much of the time.

[¶5]   After Plachek's death in 2010 Symons filed a creditor's claim against Plachek's estate in the amount of $259,200.00 seeking compensation for the care and services he provided to Plachek. The co-administrators of the estate, Wayne R. Heaton and Timothy S. Tarver, denied the claim on August 9, 2010. On August 20, 2010 Symons brought an action against the co-administrators, asserting claims for implied-in-fact contract and contract implied-in-law (promissory estoppel and unjust enrichment). The estate moved for summary judgment on all claims and the district court granted the motion.

[¶6]   This appeal followed.

## STANDARD OF REVIEW

[¶7]   Regarding our standard of review on summary judgment, we stated in *Throckmartin v. Century 21 Top Realty,* 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo. 2010),

> We evaluate the propriety of a summary judgment by employing the same standards and using the same materials as the district court. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo. 2006). Thus, our review is plenary. *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 7, 75 P.3d 640, 647 (Wyo. 2003).
>
> > Wyo. R. Civ. P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law de novo without giving any deference to the district court's determinations.
>
> *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 586 (Wyo. 2005), quoting *Baker v. Ayres and Baker Pole and Post, Inc.*, 2005 WY 97, ¶ 14, 117 P.3d 1234, 1239 (Wyo. 2005).
>
> > "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Christensen v. Carbon County*, 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo. 2004) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002)). The party requesting a summary judgment bears the initial burden of establishing a prima facie case for summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists." *Id*. We have explained the duties of the party opposing a motion for summary judgment as follows:

"After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings …, and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden."

The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact. *Cook*, ¶ 12, 126 P.3d at 890, quoting *Jones v. Schabron*, 2005 WY 65, 113 P.3d 34, 37, ¶¶ 9-11 (Wyo. 2005).

## DISCUSSION

[¶8]    Symons argues on appeal that although no express contract existed between him and Plachek, and although no testamentary documents were ever executed by Plachek, there was a bargained for exchange such that an implied-in-fact or an implied-at-law contract existed.

[¶9]    Taking each prospect – implied-in-fact contract or implied-at-law contract – separately, we begin with the question of whether an implied-in-fact contract existed.  In Wyoming negotiating parties may reach an "implied-in-fact" contract. *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 15, 75 P.3d 640, 649 (Wyo. 2003).  For an implied-in-fact contract to have been created by the parties' conduct, "''the conduct from which that inference is drawn must be sufficient to support the conclusion that the parties expressed a mutual manifestation of an intent to enter into an agreement.'''" *Birt,* ¶ 15, 75 P.3d at 649 (quoting *Shaw v. Smith*, 964 P.2d 428, 435-36 (Wyo. 1998) (quoting *Lavoie v. Safecare Health Serv.*, 840 P.2d 239, 248 (Wyo. 1992)).  We further discussed in *Birt* the process that this Court employs to determine whether an implied-in-fact contract was formed:

> [W]e look not to the subjective intent of the parties, but to "''the outward manifestations of a party's assent sufficient to create reasonable reliance by the other party.''" *Givens v. Fowler*, 984 P.2d 1092, 1095 (Wyo. 1999) (quoting

*McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 990 (Wyo. 1991)). The question is "whether a reasonable man in the position of the offeree would have believed that the other party intended to make an offer." *Boone* [*v. Frontier Ref.*, 987 P.2d 681 at 687 (Wyo. 1999)]. In 1991, we adopted Restatement (Second) of Contracts § 19 (1979) for guidance in determining whether an implied-in-fact contract exists:

> "(1) The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.
> (2) The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.
> (3) The conduct of a party may manifest assent even though he does not in fact assent. In such cases a resulting contract may be voidable because of fraud, duress, mistake, or other invalidating cause."

*McDonald*, 820 P.2d at 990. In essence, an implied-in-fact contract may arise where "parties act in a manner conveying mutual agreement and an intent to promise . . . ." *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo. 2000). Interpretation of an unambiguous implied-in-fact contract is a question of law. *Garcia v. UniWyo Federal Credit Union*, 920 P.2d 642, 645 (Wyo. 1996).

*Birt,* ¶ 16, 75 P.3d at 649.

[¶10] In support of his claim that an implied-in-fact contract existed in this case, Symons relies on statements made by Plachek, and between Plachek and other friends, that he wanted his estate to go to Symons. In his deposition Symons testified that in 2003 Plachek had a falling out with his step-daughter Angie Dinkle, whereupon Plachek informed Symons that he intended to leave his estate to Symons and not Dinkle. Furthermore, Symons claims the depositions of LuAnn and Wayne Kurpjuweit demonstrate the existence of the bargained for exchange needed to prove an implied-in-fact contract. Both Kurpjuweits testified during their depositions that Plachek promised Symons "everything," and that Plachek said if Symons stopped drinking and took care of Plachek, "[the house] would be his." Also in support of his claim that an implied-in-fact contract existed, Symons points to a power of attorney completed by Plachek in 2003. The document was notarized at the county clerk's office, where Plachek crossed out the language " … and shall automatically be revoked upon my death." Symons testified that Plachek also told Symons the document would serve as his will. Finally, Symons argues that he relied to his detriment on Plachek's promise to leave his property to him.

4

[¶11] Contrary to Symons' assertions we find nothing in the statements made by Symons, or the Kurpjuweits, that indicate a bargained for exchange between Plachek and Symons. Nor does the power of attorney carry any weight. It makes no mention of property distribution, not to mention its limited power merely giving Symons authority to deal with Plachek's affairs while he made a trip to Montana. Most importantly, in his own deposition Symons states there was "never an agreement about anything." In full context, this portion of the deposition reads as follows:

> Q: So [Plachek] pretty much took care of himself early on?
> A: Yeah.
> Q: And there was no agreement with him at that time as to –
> A: There was –
> Q: -- payments, nothing; you were just –
> A: There was never any agreement about anything.

In fact, as the deposition continued, Symons made similar statements again and again.

> Q: [D]id you stay there longer because he promised you
> things; that he promised you these things?
> A: No. No. I don't know what you're trying to get at there,
> but no.
> Q: So that didn't have any effect on you?
> A: No.
> Q: You wanted to be there with him?
> A: Yeah.

Symons' deposition makes it apparent to this Court that the summary judgment in favor of the estate's administrators was appropriate on this issue. There are no genuine issues of material fact from which a fact-finder could conclude that an implied-in-fact contract arose.

[¶12] Having found no implied-in-fact contract existed, we turn to the question of whether an implied-in-law contract occurred. An implied-in-fact contract is distinguishable from a contract "implied in law." The former may be found to exist as a matter of fact and is dependent upon the parties' intent, while the latter is imposed as a matter of law, as an equitable remedy. *Birt*, ¶ 15, 75 P.3d at 649 (citing *Amoco Prod. Co. v. EM Nominee Pshp. Co.*, 2 P.3d 534, 541 (Wyo. 2000)); *Clark v. Gale*, 966 P.2d 431, 438 (Wyo. 1998). Through the doctrines of promissory estoppel and unjust enrichment Symons argues that an implied-in-law contract must have existed here. We disagree.

[¶13] The elements of promissory estoppel are as follows:

(1) the existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3) a finding that injustice can be avoided only if the court enforces the promise.

*Redland v. Redland*, 2012 WY 148, ¶ 91, 288 P.3d 1173, 1194 (Wyo. 2012) (quoting *Parkhurst v. Boykin*, 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo. 2004)).

[¶14] Symons comes up short on the first requirement – the existence of a clear and definite promise. The power of attorney provides no such proof and Symons' own deposition testimony positively refutes any "clear and definite promise." In fact, the record raises no genuine issue of material fact with regard to any of the elements of promissory estoppel. There was no "clear and definite promise" from Plachek to Symons. There is no proof that Symons acted to his detriment. Finally, it is impossible to conclude that any injustice was done to Symons, again looking to Symons' own testimony stating that he voluntarily lived with Plachek and would have stayed with him and cared for his friend even if it took his last penny.

[¶15] Turning briefly to Symons' unjust enrichment claims, we have defined unjust enrichment and its required elements as follows:

Unjust enrichment is the unjust retention of a benefit to the loss of another. It exists as a basis for recovery for goods or services rendered under circumstances where it would be inequitable if no compensation was paid in return. In Wyoming, the elements of unjust enrichment are: 1) valuable services were rendered; 2) to the party to be charged; 3) which services were accepted, used and enjoyed by the charged party; and 4) under circumstances that reasonably notified the party being charged that the other party would expect payment for the services. *Horn v. Wooster*, 2007 WY 120, ¶ 24, 165 P.3d 69, 76 (Wyo. 2007); *Jacoby v. Jacoby*, 2004 WY 140, ¶ 10, 100 P.3d 852, 855 (Wyo. 2004).

*Redland*, ¶ 137, 288 P.3d at 1203.

[¶16] Unjust enrichment is an equitable remedy. *Schlinger v. McGhee*, 2012 WY 7A, ¶ 25, 268 P.3d 264, 272 (Wyo. 2012); *Jacoby v. Jacoby*, 2004 WY 140, ¶ 13, 100 P.3d 852, 856 (Wyo. 2004). We have stated unequivocally before that element four is the heart of an unjust enrichment claim.

The receipt of a benefit must be unjust as to the party to be charged. Unjust enrichment is an equitable remedy that is appropriate only when the party to be charged has received a benefit that in good conscience the party ought not retain without compensation to the party providing the benefit. "The words 'unjust enrichment' concisely state the necessary elements of an equitable action to recover money, property, etc., which 'good conscience' demands should be set over to the appellee by appellants pursuant to an implied contract between them." *Landeis v. Nelson*, 808 P.2d 216, 218 (Wyo. 1991). As stated at 66 Am. Jur. 2d *Restitution and Implied Contracts* § 8 (2001):

> "The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly."

*Redland*, ¶ 146, 288 P.3d at 1205-1206. Here, one friend took care of another for years. Symons never expected payment and testified to that during his deposition. Symons took care of Plachek because he was his friend. He stated that he moved in because "he wanted to," because he "wanted to be there for [Plachek]," and because of "a commitment I made to [Plachek's mother] and [Plachek] both."

## CONCLUSION

[¶17] We affirm the district court's order finding no question of material fact existed and that Symons failed as a matter of law on his claims for implied-in-fact contract, promissory estoppel and unjust enrichment.

7