2001 WY 2

Stephanie B. KENDRICK,
Appellant (Plaintiff),

v.

Daniel L. BARKER, dba Barker
Construction, Appellee
(Defendant).

No. 99–333.

Supreme Court of Wyoming.

Jan. 9, 2001.

Representing Appellant: James P. Castberg, Sheridan, WY.

Representing Appellee: Jeffrey C. Brinkerhoff, Hampton K. O'Neill, and Timothy M. Stubson of Brown, Drew & Massey, LLP, Casper, WY. Argument by Mr. O'Neill.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

GOLDEN, Justice.

[¶ 1] In this appeal, we consider whether the district court properly enforced an oral settlement agreement and ruled that, as a matter of law, Wyoming does not recognize unknown injury as grounds for finding that mutual mistake warrants setting aside an agreement to release all personal injury claims.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Appellant Stephanie B. Kendrick presents these issues for our review:

I. Did the district judge commit error in granting the defendant's motion for enforcement of settlement agreement when there existed a mutual mistake between the parties as to the plaintiff's injuries?

II. Did the district judge commit error in granting the defendant's motion for enforcement of settlement agreement that was an unconscionable settlement?

III. Did the district judge commit error in granting the defendant's motion for enforcement of settlement agreement when plaintiff accepted the offer of settlement while under duress?

IV. Did the district judge commit error in granting the defendant's motion for enforcement of settlement agreement when the plaintiff's acceptance was contingent upon the defendant submitting a written settlement agreement acceptable to the plaintiff?

Appellee Daniel L. Barker, d/b/a Barker Construction, presents this statement of the issues:

1. Did the district court commit plain error when it held that plaintiff's two affidavits, which violated the requirements of W.R.C .P. 56(e), and which contained and attached hearsay statements from her medical care providers, were sufficient to create a question of fact as to whether a mistake concerning plaintiff's condition existed at the time of the settlement conference, when plaintiff was actually required by Wyoming law to prove such a mutual mistake by the much higher burden of clear and convincing evidence?

2. Was the district court entirely correct in holding that the settlement agreement reached between the parties was as simple as the defendant agreeing to pay plaintiff $40,000 in exchange for a release of all claims, and was in no way contingent or

dependent upon the form of subsequent proposed written documentation, which simply memorialized this agreement?

3. Was the district court entirely correct in holding that plaintiff had failed to present even a *prima facie* case regarding the defense of duress, since plaintiff presented no evidence of duress in this case?

4. Was the district court entirely correct in holding that plaintiff had failed to present even a *prima facie* case regarding the defense of unconscionability, since plaintiff presented no evidence of unconscionability in this case?

## FACTS

[¶ 4] Kendrick filed suit for injuries she received when her vehicle collided with a Barker tractor-trailer. On January 25, 1999, an order entered after a scheduling conference set deadlines for motions, discovery, and scheduled a pretrial conference and trial. The order directed that there would be no change in scheduling unless approved by the district court; settlements should be reduced to writing and approved by counsel before notifying the court; and no continuances or canceling of hearing dates would be granted based on telephone calls. The parties designated a mediator and, on May 18, 1999, the district court assigned the case to the mediator for a settlement conference under W.R.C.P. 40(b).

[¶ 5] A settlement conference was held on June 4, 1999. On June 7, 1999, the mediator wrote to both parties outlining the terms of the tentative settlement agreement that had been reached and stating that Kendrick had until close of business on June 8 to accept Barker's final offer. The letter noted that the offer was open to allow Kendrick to determine an issue about a vehicle damages payment. On June 8, 1999, Kendrick's attorney faxed to Barker's attorney and the mediator Kendrick's acceptance of "$40,000.00 in full settlement of all claims against the Defendant." The mediator responded with a letter that day instructing the parties to prepare the first drafts of closing and settlement documents within three weeks. Kendrick's attorney also notified the district court, and the trial setting was vacated. After Ken-

drick received the document drafts, she notified her attorney that she would not accept the settlement and hired a new attorney.

[¶ 6] Barker filed a motion seeking enforcement of the settlement agreement and denial of the withdrawal of Kendrick's first attorney. Kendrick opposed enforcement, contending that the drafts' terms were inaccurate because she had agreed to the settlement offer of $40,000.00 for medical expenses only, not lost income, and contingent upon her car insurer's not seeking subrogation. Additionally, Kendrick contended that on July 19, 1999, after the settlement conference, she was diagnosed with a closed head injury, and she argued that mutual mistake precluded enforcement of the agreement.

[¶ 7] The trial court held a hearing on September 16, 1999, and Kendrick confirmed that she was objecting to form by requiring that the settlement proceeds be designated as medical expense damages and was not contending that she had reserved a claim against Barker. She also stated that she had been unable to obtain a written release of any subrogation claim from her car insurer and enforcement of the agreement could lead to an actual recovery of $2,000 which she contended was unconscionable. Kendrick also argued duress. Barker conceded that her acceptance of the offer was contingent upon whether her insurer would seek subrogation, but contended that her former attorney's affidavit indicated that he had confirmed the insurer would not seek subrogation before her acceptance and it was therefore not an issue barring enforcement. Barker contended that in Wyoming mutual mistake was inapplicable and, in any event, Kendrick's summary judgment materials violated W.R.C.P. 56(e) and the court did not have proper medical records before it to reach a decision on mutual mistake.

[¶ 8] After Kendrick told the trial court that that her car insurer had paid $10,000.00 for medical expenses and $8,000.00 for property damage, the trial court advised that the settlement proceeds could be designated strictly for medical expenses; however, in its order, the trial court did not make such a designation and, instead, ruled that a prepon-

derance of the evidence showed that an oral settlement agreement without contingencies was reached after both parties negotiated concessions to their original positions with counsel present. The trial court also noted that Kendrick did not question the mediator's letter outlining the tentative settlement and unequivocally accepted the offer, and further, the parties' notification to the court that a settlement agreement had been reached resulted in vacating the pretrial conference and trial to which Kendrick did not object and she did not appear for those proceedings. The trial court found that the agreement was not contingent upon the form of written documentation and a prima facie case of duress and unconscionable bargain was not established. It further found that a question of fact on the issue of mutual mistake existed; but because Wyoming did not recognize a tort theory of mutual mistake, which the trial court understood to be different from mutual mistake in contract law, summary judgment was granted to Barker on that issue. This appeal followed.

## DISCUSSION

*Standard of Review*

[¶ 9] In Wyoming, trial courts have the inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case. *Wyoming Sawmills, Inc. v. Morris,* 756 P.2d 774, 779 (Wyo. 1988); *Kukla v. National Distillers Products Company,* 483 F.2d 619, 621 (6th Cir.1973). The authority to enter a final judgment does not rest upon W.R.C.P. 56. *Kukla,* 483 F.2d at 621.

> "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation. To effectuate this policy, the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing."

*Wyoming Sawmills,* 756 P.2d at 779 (quoting *Kukla,* 483 F.2d at 621).

[¶ 10] When the trial court is determining whether an oral settlement agreement exists that must be summarily enforced under its inherent authority, the court should examine factors indicating that, after involving the court in the dispute, the parties intended to settle the claim out of court and with legal advice and abandoned pursuit of a legal remedy. *McCormick v. McCormick,* 926 P.2d 360, 363 (Wyo.1996); *cf. Kukla,* 483 F.2d at 621–22.

*Enforcement of Settlement Agreement*

[¶ 11] Addressing Kendrick's last issue first, she contends that her agreement to settle was contingent upon the written contract's expressing that the settlement amount was for medical expenses only, not lost income, and that her car insurer would not be seeking subrogation for the medical expenses that it paid. Barker contends that the trial court correctly ruled that the oral agreement was simply $40,000.00 in exchange for a release of all claims and no contingencies existed that prevented enforcement of the agreement. Although the transcripts show that the trial court explored avenues to resolve Kendrick's concern that the proceeds be designated as medical expenses, we agree with Barker that the trial court decided that Kendrick's acceptance of Barker's offer was not contingent upon the form of the written documentation.

[¶ 12] A settlement agreement is a contract that is subject to the legal principles applicable to any contract. *McCormick,* 926 P.2d at 362. Whether an oral or written contract has been entered into depends on the parties' intent and is a question of fact. *Wyoming Sawmills,* 756 P.2d at 775. The finder of fact in this case was the trial court, which heard all of the evidence offered by Kendrick and Barker. In our review of this decision, we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of

law. *Burg v. Ruby Drilling Co., Inc.*, 783 P.2d 144, 153 (Wyo.1989).

[¶ 13] Here, the trial court found that an oral agreement existed, rejected Kendrick's argument that the agreement was contingent upon the written agreement, and examined many factors similar to those listed in *McCormick* to find that the agreement should be enforced. Kendrick does not contend those findings are unsupported or in error, and we defer to these findings.

*Mutual Mistake*

[¶ 14] The trial court determined that, as Kendrick contended, the majority of courts will set aside a release of a personal injury claim upon grounds of mistake involving an unknown injury. It further found that Kendrick had established a genuine issue of fact whether she suffered from an unknown closed head injury at the time she agreed to a settlement and release; however, it ruled that because Wyoming had not adopted unknown injury as grounds for setting aside the release, it was proper to enter summary judgment for Barker. Barker does not accept that summary judgment proceedings were properly invoked on this issue; however, because the trial court invoked that standard, it contends that Kendrick's evidence of an unknown injury was improper under Rule 56(e) and insufficient to survive summary judgment.

[¶ 15] The trial court specifically found that it was not ruling that Kendrick's medical evidence was competent to withstand summary judgment but was instead determining that, as a matter of law, Wyoming does not recognize discovery of an unknown injury as grounds for setting aside a release of all claims. We agree with the trial court that the issue whether Kendrick's release of all claims should be set aside for mutual mistake must be decided.

[¶ 16] Kendrick contends that the basis for her mutual mistake claim is that the parties were unaware she had suffered a closed head injury at the time of the settlement. As she claims, many courts will set aside a release of all claims reached by settlement for an unknown injury usually after considering factors indicating that the settlement was un-

conscionable. *See Casey v. Proctor*, 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579, 587 (1963); *Wheeler v. White Rock Bottling Co. of Oregon*, 229 Or. 360, 366 P.2d 527, 530 (1961).

> The courts which have granted relief from premature releases in such cases have talked in terms of mutual mistake. The decisions recognize that ordinarily mistaken opinions, or bad guesses about future possibilities, do not constitute the kind of mutual mistake that will make a contract voidable at the option of either party. However, the courts following the policy of treating improvident releases as voidable apparently are guided by these factors: (a) the peculiar dignity the law accords the human person, as distinguished from articles of commerce; (b) the very real possibility of being mistaken about the long-range effects of damage to human tissue; and (c) the inequality of the bargaining positions of the contracting parties.

*Wheeler*, 366 P.2d at 530.

[¶ 17] On the other hand, a competing set of policy reasons justify a decision that the mutual mistake of unknown injury is not grounds for setting aside an untainted agreement to release all claims:

> [T]his court has considered the settlement of claims prior to litigation to be in the public interest.... There is no reason in principle why an improvident settlement made before trial is any more to be set aside than a judgment rendered upon a verdict that hindsight later proves to have been obtained too soon and for too little.

> \* \* \*

> [T]here are attractive policy reasons for adopting a rule that would permit perfectly honorable releases to be repudiated in the event of aggravation of an injury or the discovery of undiagnosed injuries. There are less compassionate but equally sound policy reasons for requiring persons of legal age and capacity to contract to stand by their covenants, including bargains containing an element of chance.

*Wheeler*, 366 P.2d at 530.

[¶ 18] We have long held that the policy of the court is to encourage settling

claims without litigation. *Wyoming Sawmills*, 756 P.2d at 779. "A release discharges another from an existing or asserted duty, claim or obligation, and it bars recovery thereon." *M & A Const. Corp. v. Akzo Nobel Coatings, Inc.*, 936 P.2d 451, 456 (Wyo.1997) (quoting *Kelliher v. Herman*, 701 P.2d 1157, 1159 (Wyo.1985)). Releases, or exculpatory agreements, are contractual in nature. *Id.; Milligan v. Big Valley Corp.*, 754 P.2d 1063, 1065 (Wyo.1988). In Wyoming, we recognize that fraud, duress, mistake, or unconscionable bargain will vitiate a contract. *Snyder v. Lovercheck*, 992 P.2d 1079, 1089 (Wyo.1999). Further, we recognize that there is a special relationship created by the unequal bargaining power that an insurer has over an insured. *McCullough v. Golden Rule Insur. Co.*, 789 P.2d 855, 858–59 (Wyo.1990); *see Durdahl v. National Safety Assoc.*, 988 P.2d 525, 527–28 (Wyo.1999). Absent these factors, however, when parties reduce a contract to writing, they must abide by its plainly stated terms. *Snyder*, 992 P.2d at 1089 (citing *Patel v. Harless*, 926 P.2d 963, 966 (Wyo.1996)). Courts are not free to rewrite contracts under the guise of interpretation where the contractual provisions are clear and unambiguous. *Id.* (citing *Klutznick v. Thulin*, 814 P.2d 1267, 1270 (Wyo.1991). "Accordingly, in private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract." *Id.*

[¶ 19] A mutual mistake is one that is reciprocal and common to both parties, each alike laboring under the same misconception. *Shrum v. Zeltwanger*, 559 P.2d 1384, 1386 (Wyo.1977). A contract is voidable on grounds of mutual mistake when both parties independently make a mistake at the time the contract is made as to a basic assumption of the contract, unless the party seeking avoidance bears the risk of the mistake. Restatement (Second) of Contracts § 152 (1981). A party bears the risk of mistake when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." *Id.* at § 154(b). In such a situation, there is no mistake.

Instead, there is an awareness of uncertainty or conscious ignorance of the future. *Id.* at § 154, cmt. c.

[¶ 20] In this case, Kendrick entered into the release agreement years after the accident and with the advice of counsel. Kendrick knew there was uncertainty surrounding the extent or consequences of her injuries, as she was not yet cured. Therefore, by accepting Barker's settlement offer Kendrick accepted a known risk that the extent or consequences of her injuries could change in the future.

[¶ 21] At the trial court hearing on September 16, 1999, Kendrick confirmed that she had understood the release was in full settlement of her claim against Barker. She did not contend that she had reserved certain claims. As stated by the Maryland Court of Appeals:

> If from the particular language of the release or from the circumstances of the negotiated settlement, there was a conscious and deliberate intention to discharge liability from all consequences of an accident, the release will be sustained and bar any future claims of previously unknown injuries.

*Bernstein v. Kapneck*, 290 Md. 452, 430 A.2d 602, 607 (1981). "Thus, the 'mistake' found is the fact that the parties did not know the extent of the injuries suffered, notwithstanding that the releasor expressly assumed the risk (as parties to all contracts inevitably do) of the lack of omniscience as to what might develop in the future, by an express release of all unknown claims." *Id.*

Releasees do not make settlement and take general releases merely to pay the releasor the first installment on what he should have, leaving the matter open for the releasor to come back for more if his injuries prove serious. On the contrary, a settlement is made and a general release taken for the purpose of foreclosing further claims. The releasee does not stand in a fiduciary relation to the releasor. The injured party is not required to make a settlement, and the general rule of freedom of contract includes the freedom to make a bad bargain.

*Sanger v. Yellow Cab Co. Inc.,* 486 S.W.2d 477, 481–82 (Mo.1972).

[¶ 22] Although the trial court found a genuine issue of fact whether Kendrick suffered from an unknown closed head injury at the time she agreed to a settlement, we find the factual issue of whether a mutual mistake existed irrelevant. Kendrick bargained away all of her rights against Barker when she accepted the settlement offer. In light of these facts and available protections under the law, we do not find it necessary to adopt a rule providing for special treatment of releases for personal injuries.

### Duress and Unconscionable Bargain

[¶ 23] Kendrick also seeks to defend against enforcement of the settlement with claims of duress and unconscionable bargain. She claims that she was placed under duress to settle when her first attorney caused her to believe that she would be responsible for all of Barker's attorney fees if she lost at trial at a time when medical expenses and lost income had financially harmed her. She also contends that her attorney pressured her to accept the settlement agreement. She claims that in the event that her insurer seeks subrogation an unconscionable result will occur because she will recover a mere $2,000 under the settlement as enforced. The trial court ruled that these allegations did not establish *prima facie* cases of these two defenses and entered judgment against Kendrick.

[¶ 24] Kendrick bears the burden of proving that she agreed under duress. *Goodson v. Smith,* 69 Wyo. 439, 457–58, 243 P.2d 163, 171 (Wyo.1952). "[D]uress exists whenever a person is induced, by the unlawful act of another, to perform some act under circumstances which deprive him of the exercise of free will." *In Re TR,* 777 P.2d 1106, 1111 (Wyo.1989). Kendrick's argument that financial issues constituted duress is a claim of economic duress.

Whether particular facts are sufficient to constitute economic duress is a question of law. Whether these circumstances exist is a question of fact. The Tenth Circuit Court of Appeals, when applying Wyoming law to a duress defense to avoid the enforcement of an agreement, said:

The Wyoming test for duress is not inconsistent with the test for economic duress developed in those states which have expressly recognized economic duress as grounds for avoiding a settlement agreement.

This Court, however, has not directly had the opportunity to adopt what is commonly known as the "economic duress" doctrine. We take this opportunity now to do so and embrace the three-prong test employed by many courts to determine whether economic duress exists. Under this test, economic duress occurs when (1) a party involuntarily accepts the terms of another, (2) circumstances permit no other alternative, and (3) such circumstances are the result of coercive acts of the other party. Economic duress does not exist, however, unless a person has been the victim of a wrongful act and has no reasonable alternative but to agree with the terms of another or be faced with a serious financial hardship. What constitutes a coercive act or reasonable alternative is a question of fact depending upon the circumstances of each case. Ordinarily, those people who are claiming coercion are attempting to avoid the consequences of a modification or breach of a contract or a settlement and release of a contract, as in this case. A person may not have a reasonable alternative or remedy when the delay in pursuing the remedy would cause immediate or irreparable serious loss or financial ruin.

*Blubaugh v. Turner,* 842 P.2d 1072, 1074–75 (Wyo.1992) (citations and quotations omitted). Kendrick does not present argument specific to these elements and does not present authority that her attorney's actions were wrongful, unlawful, or that these left her with no alternative. Refusing to sign the settlement agreement and hiring another attorney indicates that Kendrick was willing to go to trial and was not economically coerced into settling. She has not presented any

evidence that she faced irreparable serious loss or financial ruin. We do not find any facts to support her claim of duress and affirm the trial court's ruling.

[¶ 25] The district court's order of judgment is affirmed.